UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES S. ALEXANDER,<br><br>    Plaintiff,<br><br>  v.<br><br>SOLANO COUNTY DETENTION FACILITY, et al.,<br><br>    Defendants. | No.  2:13-cv-2566 GEB CKD P<br><br><u>ORDER</u> AND<br><br><u>FINDINGS AND RECOMMENDATIONS</u> |

    This pro se prisoner action pursuant to 42 U.S.C. § 1983 proceeds against defendant Connors.[1]  (ECF Nos. 1 & 8.)  Plaintiff alleges that Connors used excessive force against him in violation of the Eighth Amendment while escorting him to his housing unit in April 2013.  (<u>Id.</u>)

I. <u>Procedural History</u>

    The dispositive motion deadline in this action was December 1, 2014.  (ECF No. 19.)  On November 11, 2014, defendant filed a motion for summary judgment.  (ECF No. 22.)

    On December 18, 2014, plaintiff was granted a three-month extension of time, until March 2, 2015, to file and serve an opposition to summary judgment.  (ECF No. 28.)  In the ensuing three months, plaintiff filed various motions and other documents (ECF Nos. 29, 30, 31,

---

[1] The court adopts the spelling of "Connors" used by defendant.

1

32 & 33), but no opposition to summary judgment. After the deadline passed, the court ordered plaintiff to file "an opposition to the motion for summary judgment or a statement of non-opposition" within thirty days or face dismissal of this action pursuant to Federal Rule of Civil Procedure 41(b). (ECF No. 38.)

Plaintiff did not file an opposition or statement of non-opposition. Rather, on March 26, 2015, he filed his own motion for summary judgment. (ECF No. 39.) This purported motion consists of a Freedom of Information Act request to the Department of Homeland Security and an unsigned, one-page declaration by plaintiff concerning the events at issue in this case. (Id.) Defendant has opposed the motion on the grounds that it is untimely and presents no evidence that can be considered on summary judgment. (ECF No. 45, citing ECF No. 15 at ¶ 14 ("[D]eclarations not signed under penalty of perjury have no evidentiary value.").) Based on the foregoing, the undersigned will recommend that plaintiff's motion for summary judgment (ECF No. 39) be denied for untimeliness.

II. Defendant's Motion for Summary Judgment

As to defendant's motion for summary judgment, the court has reviewed the docket and, instead of recommending that this action be dismissed pursuant to Rule 41(b), will consider plaintiff's signed declaration, filed January 27, 2015, in opposition to summary judgment.[2] (ECF No. 32.) See Newman v. Ventura County, 2011 WL 1630405, at *4, n.3 (C.D. Cal. 2011) ("Plaintiff is a pro se prisoner, and, accordingly, the Court has an obligation to liberally construe the documents he files, including his motion papers.") (citing cases).

A. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by

---

[2] See ECF No. 15 at ¶ 12: "To oppose a motion for summary judgment, plaintiff must show proof of his or her claims. Plaintiff may do this in one or more of the following ways: . . . Plaintiff may serve and file one or more affidavits or declarations setting forth the facts that plaintiff believes prove plaintiff's claims; the person who signs an affidavit or declaration must have personal knowledge of the facts stated."

2

1  "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

////

B. <u>Facts</u>

The following facts are undisputed:

On April 26, 2013, plaintiff was an inmate in the Solano County Detention Facility, or county jail. (ECF No. 32 at ¶ 1.) Defendant Connors was a correctional officer at the jail, whose duties included escorting inmates from the Receiving and Release area to their housing units. (DUF 1-2.)[3] The Receiving and Release area is where inmates are processed before entering or leaving the jail, and the inmates are temporarily placed in transfer cells. (DUF 3.)

On April 26, 2013, plaintiff was transported back to the jail after a court date. (ECF No. 32 at ¶ 2.) Plaintiff arrived around 12:45 p.m. and was placed in an "interview booth" to await an escort back to his unit. (Id. at ¶¶ 3-5.) While waiting in the booth, he needed to use the bathroom and banged on the door to get someone's attention. (Id. at ¶ 6.)

At approximately 1:15 p.m., Connors arrived at the transfer cell where plaintiff was being held. (DUF 4.) Plaintiff was kicking and banging on the cell door and yelling, "Get me out of here." (DUF 5.)

After Connors was informed that plaintiff could be brought back to his housing unit, he went to open the transfer cell door and told plaintiff to face the wall so he could place plaintiff in handcuffs[4], per jail protocol. (DUF 7-8; ECF No. 32 at ¶ 8.)

At this point, the parties' stories diverge. Defendant declares that plaintiff failed to comply with the order to face the wall. (DUF 9.) Plaintiff declares:

> I comply. He then shoved me into the wall and grabbed me by the back of my shirt and neck . . . I tried [to] ask what the problem was but I had a hard time speaking being that I was having trouble breathing because of Officer Conner's [sic] hold on my shirt and neck.
>
> At no time did I pose a threat to Officer Conners being that my restraints were never removed from my hands, waist and ankles. I followed what was asked of me. I tried to tell Officer Conners that I could not breath [sic] and that it was hard for me to walk in leg restraints . . . Officer Conners . . . put me in an extremely painful

---

[3] Defendant's Undisputed Facts. (ECF No. 22-2.)

[4] Plaintiff declares that he was still in handcuffs, waist chains, and leg shackles from his court appearance. (ECF No. 32 at ¶¶ 2-3, 5.)

4

> arm lock which made me cry out in pain. I did not resist . . . nor could I with handcuffs and waistchains and leg restraints. Before we get to the elevator Officer Conners kicked my legs from under me and slammed [sic] my body to the ground. Causing me to slam head to the ground.

(ECF No. 32 at ¶¶ 8-9.)

Defendant declares that he turned plaintiff against the wall because plaintiff's actions were a threat to his safety, and the force used was no more than necessary to gain plaintiff's compliance and stop the immediate threat. (DUF 10-11.) Defendant further declares that, as he was escorting plaintiff, plaintiff "started to resist and press his feet to the floor," so defendant placed him in an arm lock in order to overcome his resistance and continue the escort. (DUF 12-13.) When plaintiff "turned toward Connors in an aggressive manner," defendant "conducted a leg sweep and lowered Alexander to the floor, and placed Alexander on his back." (DUF 15.) Defendant declares that he conducted the leg sweep because plaintiff seemed about to assault him and was deemed a threat. (DUF 16.)

Plaintiff declares that, next, defendant got him to his feet and shoved him into the wall by the back of his neck. Plaintiff asked nearby officers for help "because I feared for my life and safety with Officer Conners." (ECF No. 32 at ¶ 10.) After non-defendant Officer Carreon joined them in the elevator, defendant "shoved me forward, causing me to fall down," and then defendant and Carreon "proceeded to drag me . . . from the elevator down [the] hallway to my unit and cell." (Id. at ¶ 11.) In the cell, defendant "put his knee with all his weight on my head and put me in a painful arm lock while my restraint[s] were removed." (Id. at ¶ 12.)

Defendant submits declarations from two jail correctional officers, A. Overton and A. Carreon, who were present for some of the events in question. (ECF Nos. 22-4 & 22-7.) Overton declares that he saw plaintiff "attempt to break free from Connors' hold," causing defendant to place plaintiff in an arm lock. (ECF No. 22-4 at ¶ 2.) After plaintiff "became more agitated," defendant performed a leg sweep, causing plaintiff to fall backward. (Id. at ¶ 3.) "Due to Alexander's disruptive and hostile behavior," Overton radioed for other officers to assist defendant. (Id. at ¶ 4.) By the time additional officers arrived, defendant had plaintiff "under control" and did not need assistance. (Id.) Yet one, Officer Carreon, stayed to assist with the

5

1  escort. (Id.)

2  Carreon declares that he arrived to see defendant holding plaintiff against the elevator
3  wall. (ECF No. 22-7 at ¶2.) Carreon joined them in the elevator in case defendant needed help.
4  (Id.) "Once the elevator arrived on the second floor, Alexander dropped to the ground and
5  refused to walk. As a result, Connors and I had to pick up Alexander and carry him to his cell.
6  When we got to the cell, Alexander was placed in a prone position and I removed his restraints.
7  Alexander was then given an order not to move until his cell door was closed. Connors and I
8  exited the cell without further incident." (Id. at ¶ 3.) Both Overton and Carreon declare that they
9  did not see defendant use excessive or unnecessary force against plaintiff. (ECF No. 22-4 at ¶ 5;
10  ECF No. 22-7 at ¶ 4.)

11  Finally, defendant asserts that, by failing to respond to defendant's Requests for
12  Admission, plaintiff has effectively admitted that he has no viable claim of excessive force. (See
13  ECF No. 22-5, Decl. of Williams, Ex. A.)[5] The RFAs asked plaintiff to admit the following:

14  RFA No. 1:
15  You have no facts to support your claim that Connors violated your
    rights under the Eighth Amendment.
16
    RFA No. 2:
17
18  Connors did not use excessive force on you.

    RFA No. 3:
19
20  Connors did not slam your head into the ground.

    RFA No. 4:
21
22  Connors never hit you.

    RFA No. 5:
23
24  Connors never kicked you.

---

25  [5] Rule 36 of the Federal Rules of Civil Procedure allows a party to request another party to admit
26  the truth of any matters relating to the facts at issue in the case or the genuineness of any
    described document. Fed. R. Civ. Proc. 36(a)(1). It further provides that a request for admission
27  is deemed admitted if a response to the request is not served within thirty days of service of the
    request.
28

> RFA No. 6:
>
> You did not suffer any injury as a result of the actions of Connors.
>
> RFA No. 7:
>
> While Connors was escorting you to your housing unit on April 26, 2013, you failed to obey his orders to face the wall.
>
> RFA No. 8:
>
> While Connors was escorting you on April 26, 2013, you actively resisted by refusing to walk.

(Decl. of Williams, Ex. A at 4-6.)  The RFAs notified plaintiff that, pursuant to Rule 36 of the Federal Rules of Civil Procedure, the RFAs would be deemed admitted unless responses were served within 45 days.  (Id. at 1.)

After plaintiff failed to timely respond to the RFAs, defendant's counsel sent him a letter notifying him that the answers were deemed admitted and that defendant intended to use the admissions in support of his upcoming motion for summary judgment.  (Id., Ex. B.)  Defendant's attorney declares that "[t]o date plaintiff has failed to serve defendant with responses to any of the discovery requests."  (ECF. No. 22-5, Decl. of Williams at ¶ 5.)

C. Analysis

"[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  Whitely v. Albers, 475 U.S. 312, 319 (1986).  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  Wilkins v. Gaddy, 559 U.S. 34, 37-38 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 9, (1992).

Not every malevolent touch by a prison guard gives rise to a federal cause of action.  Wilkins, 559 U.S. at 37.  In determining whether the use of force was wanton and unnecessary, courts may evaluate the extent of the prisoner's injury, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.

7

1  Hudson, 503 U.S. at 7 (quotation marks and citations omitted).  While the absence of a serious
2  injury is relevant to the Eighth Amendment inquiry, it does not end it.  Hudson, 503 U.S. at 7.
3  The malicious and sadistic use of force to cause harm always violates contemporary standards of
4  decency.  Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 9).
5       Here, putting aside the deemed admissions, plaintiff has raised a genuine dispute of fact as
6  to whether defendant's use of force was excessive under the Eighth Amendment.  Essentially, he
7  contends in his declaration that he was not resisting or threatening defendant, making defendant's
8  use of force unnecessary and malicious.  Defendant and other correctional guards counter that
9  plaintiff was resisting being transported, and thus the use of force was reasonable under the
10  circumstances.  Typically this would be a question for the finder of fact.
11       Moreover, "using deemed admissions as the only basis in support of a defense motion for
12  summary judgment is not the preferred method of addressing such an action."  Jefferson v.
13  Weaver, 2012 WL 1899205, *5 (E.D. Cal. 2012) (granting summary judgment for defendants on
14  basis of deemed admissions where pro se plaintiff did not oppose summary judgment and thus
15  created no dispute of material fact).  See also Jones v. McGuire, 2012 WL 2376290, *7 (E.D. Cal.
16  2012) (disfavoring "requests for admission that, once unanswered, would translate into 'deemed'
17  concessions of plaintiff's entire case"); Kirk v. Richards, 2011 WL 4374999, *3 (E.D. Cal. 2011)
18  (disfavoring deemed admissions that "go directly to the ultimate questions at issue in this case"
19  where allowing defendant to prevail on the basis of such admissions "would . . . allow the pro se
20  plaintiff to essentially be sandbagged into admissions he made at least some reasonable attempt to
21  deny.").
22       Rule 36 provides that "[a] matter admitted under this rule is conclusively established
23  unless the court, on motion, permits the admission to be withdrawn or amended."  Fed. R. Civ. P
24  36(b).  A party may withdraw or amend an admission if the court finds that withdrawal will aid in
25  presenting the merits of the case and no substantial prejudice to the party who requested the
26  admission will result from allowing the admission to be withdrawn or amended.  Fed. R. Civ. P.
27  36(b); see Conlon v. United States, 474 F.3d 616, 625 (9th Cir. 2007) (court must consider both
28  factors in deciding motion to withdraw or amend).

Here, the court will grant plaintiff thirty days to file a motion to withdraw the deemed admissions.  See Thomas v. Antipov, 2013 WL 6086765, *2 (E.D. Cal. 2013) (withdrawing deemed admissions on plaintiff's motion in order to "aid in presenting the merits of the case, and serve[] the truth-seeking goal of litigation.").  Along with any such motion, he must provide responses to defendants' RFAs.  See id.  The court will not issue a recommendation on defendants' motion for summary judgment until plaintiff has had this final opportunity to file a withdrawal motion and serve responses.

Accordingly, IT IS HEREBY ORDERED that, no later than 30 days from the date of this order, plaintiff shall (1) file a motion to withdraw his deemed admissions and (2) serve defendants with responses to defendants' RFAs.  Failure to comply with this order will result in the RFAs being deemed admitted for purposes of summary judgment.

IT IS HEREBY RECOMMENDED that plaintiff's motion for summary judgment (ECF No. 39) be denied as untimely.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 12, 2015

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 / alex2566.sj